```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

FRANK BROWN,

                Plaintiff,        **No. 6:11-CV-6065(MAT)**
  -vs-                             **DECISION AND ORDER**

SUPERINTENDENT FISCHER, et al.,

                Defendants.

## I.   Introduction

Frank Brown ("Plaintiff"), proceeding pro se, instituted this action pursuant to 42 U.S.C. 1983, alleging that Defendants violated his constitutional rights while he was an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") housed at Elmira Correctional Facility ("Elmira"). The Court (Larimer, D.J.) dismissed the Complaint (Dkt #1) in its entirety pursuant to 28 U.S.C. § 1915(e)(B)(i), finding that it was "composed of the type of 'fantastic,' 'delusional' and 'incredible' allegations that warrant dismissal as factually frivolous." Order dated June 27, 2011, p. 3 (Dkt #9). Judge Larimer denied leave to replead on the basis that amending the Complaint would be futile. Id., p. 4.

Plaintiff appealed to the United States Court of Appeals, which vacated Judge Larimer's order and remanded the case to provide Plaintiff an opportunity to proceed with respect to the following causes of action: (1) his Eighth Amendment excessive force claim (First Claim); (2) his First Amendment retaliation claims that are not based on food-tampering incidents (Second and

Fourth Claims); (3) his First Amendment mail-tampering claims (Third and Eleventh Claims); (4) his Fourteenth Amendment due process claim against correctional officers (Sixth Claim); (5) his First Amendment free exercise claim (Tenth Claim); and (6) his claim alleging that individual DOCCS officials allowed prison employees to commit constitutional violations (Fourteenth Claim), "to the extent that the claims are brought against individual defendants, as the claims state non-frivolous causes of action." Brown v. Fischer, 11-2809-pr (2d Cir. Dec. 2, 2011), issued as mandate Jan. 12, 2012 (Dkt #16). The Second Circuit dismissed the appeal with respect to all of the foregoing claims, to the extent that Plaintiff's allegations were directed against DOCCS, on the basis that as state agencies are not "persons" amenable to suit under 42 U.S.C. § 1983. Id. Finally, the Second Circuit dismissed the Fifth, Seventh, Eighth, Ninth, and Twelfth Claims as lacking any arguable basis in fact or law. Id.

Thus, the First, Second, Third, Fourth, Six, Tenth, Eleventh, and Fourteenth Claims were allowed to proceed. Defendants have moved to dismiss these remaining claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") for failure to state a claim upon which relief may be granted. Plaintiff has opposed the motion. For the reasons that follow, Defendants' motion is granted in its entirety, and the Complaint is dismissed.

## II. General Legal Principles

### A. Motions to Dismiss for Failure to State a Claim

Rule 12(b)(6) allows dismissal of complaints based upon the plaintiff's failure "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In order "[t]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible on its face*.'" Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (emphasis supplied)). In assessing a claim's plausibility, the district court must "assume [the] veracity" of all well-pleaded factual allegations contained in the complaint, Iqbal, 129 S. Ct. at 1950, and draw every reasonable inference in favor of the plaintiff, Zinermon v. Burch, 494 U.S. 113, 118 (1990). However, the plaintiff's allegations must consist of more than mere labels or a "formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1949-50.

The facial plausibility standard is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. Although this

3

standard does not require a showing of a probability" of misconduct, it does demand more than "a sheer possibility that a defendant has acted unlawfully." Id. Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," dismissal is appropriate. Starr v. Sony BMG Music Entertainment, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1950); see also Twombly, 550 U.S. at 570 (noting that where plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed"). If, even assuming the truthfulness of the allegations, they "could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558.

### B. Construction of Pro Se Pleadings

The Supreme Court has noted that "[a] document filed pro se is to be liberally construed,' and must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see also Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007). Because Plaintiff is acting pro se, the Court will construe his submissions liberally, "to raise the strongest arguments they suggest." Bertin, 478 F.3d at 489.

**III. Discussion**

    **A.    First Claim: Excessive Force**

In support of his first claim, Plaintiff alleges that he was subjected to an excessive use of force in violation of the Eighth Amendment on March 27, 2006. Corrections officers alleged to have been involved include Harvey, Chorney, Perfetti, and Steinhopper. Defendants argue that this claim is time-barred because it pertains to an event that occurred outside the applicable three-year statute of limitations.

"In light of the 'settled federal practice' of reaching constitutional questions only when a case cannot be decided on statutory grounds, New York City Transit Authority v. Beazer, 440 U.S. 568, 582, 99 S. Ct. 1355, 1364, 59 L.Ed.2d 587 (1979), this Court is obligated to decide defendants' statute of limitations argument before considering the merits of plaintiff's constitutional claims." Lee v. Coughlin, 643 F. Supp. 546, 548 (W.D.N.Y. 1996). There is no dispute that the present action was filed in this Court on January 31, 2011. Following the settled law of this Circuit, the Court "will proceed on the assumption that this § 1983 action was commenced for limitations purposes . . . when it was received by the Clerk of this Court." Lee, 643 F. Supp. at 548 n.2 (citing Rosenberg v. Martin, 478 F.2d 520, 522 & n. 1a (2d Cir. 1973), cert. denied, 414 U.S. 872 (1973);

5

Salahuddin v. Milligan, 592 F. Supp. 660 (S.D.N.Y. 1984), aff'd without opn, 767 F.2d 908 (2d Cir. 1985)).

The Reconstruction Civil Rights Acts do not contain a statute of limitations for actions brought under 42 U.S.C. § 1983. Federal courts therefore must "borrow" from state law the most analogous state statute of limitations that is not inconsistent with federal laws or policy. Lee, 643 F. Supp. at 548 (citing Burnett v. Grattan, 468 U.S. 42, 49 (1984)); see also Wilson v. Garcia, 471 U.S. 261, 268 (1985). "By adopting the statute governing an analogous cause of action under state law, federal law incorporates the state's judgment on the proper balance between the policies of repose and the substantive policies of enforcement embraced by the state cause of action." Baker v. City of N.Y., 934 F. Supp. 533, 534-35 (E.D.N.Y. 1996) (citing Wilson, 471 U.S. at 271).

The Supreme Court held in Wilson that § 1983 claims are best characterized as personal injury actions for purposes of the statute of limitations. 471 U.S. at 280. In Owens v. Okure, 488 U.S. 235 (1989), a case which arose in New York state, the Supreme Court refined this principle by holding that where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions. Owens, 488 U.S. at 250. Applying that holding to the specific facts in

6

Owens, the Supreme Court concluded that New York's three-year statute of limitations governing general personal injury actions, see New York Civil Practice Law and Rules ("C.P.L.R.") § 214(5), applied to § 1983 claims in that state.

There is, therefore, a three-year statute of limitations applicable to Plaintiff's excessive force claim. This three-year period began to run when Plaintiff knew, or has reason to know, of the injury forming the basis of his action. Singleton v. City of N.Y., 632 F.2d 185, 191 (2d Cir. 1980), cert. denied, 450 U.S. 920 (1981). In this case, Plaintiff obviously knew of his injury as soon as it occurred, on March 27, 2006. Plaintiff had three years from that date, or until on March 27, 2009, to file his complaint. However, Plaintiff did not commence this action until January 31, 2011, almost two years after the statute of limitations had expired. His first claim is therefore time-barred.

**B.    Second Claim: Retaliatory Deprivation of Showers and Meals**

Plaintiff asserts that defendants Harvey, Chorney, and Perfetti denied him showers and meals on March 10, 2006, in retaliation for his exercising his First Amendment right to seek redress of grievances. A three-year statute of limitations applies to prisoners' claims that they were subjected to retaliatory and unconstitutional treatment by prison officials.

E.g., Crosland v. Safir, No. 01-7619, 54 F. App'x 504, 505, 2002 WL 31867823, at *1 (2d Cir. Dec. 20, 2002) (unpublished opn.).

The alleged instance of retaliation set forth in the Second Claim occurred on March 10, 2006. In order to be within the three-year limitations period, he would have had to file his Complaint by March 10, 2009. The Second Claim is therefore time-barred and must be dismissed.

### C. Third Claim: Interference with Mail

Plaintiff asserts that on February 17, 2006, defendants Harvey, Chorney, and Perfetti tampered with his mail in violation of his First Amendment rights. As Defendants argue, this claim was required to have been filed by February 17, 2009. Therefore, it is outside the three-year statute of limitations and must be dismissed as time-barred.

### D. Fourth Claim: Threats of Retaliation

Plaintiff alleges that on April 10, 2006, Drs. Satti, Brown, and Price told him that if he did not stop writing grievances on staff members, he "will stay in observation cells." Complaint, Fourth Claim (Dkt #1). Plaintiff asserts that his First Amendment rights were thereby violated.

Defendants note that none of the defendants allegedly involved in this incident has been served with the Complaint. In addition, Defendants argue, this claim is barred by the

applicable three-year statute of limitations. The Court agrees, and the Fourth Claim is dismissed as untimely.

### E. Sixth Claim: Violation of Due Process

Plaintiff asserts that on April 14, 2006, Captain Wenderlich and "Lieutenant C" intentionally destroyed eight minutes of the videotape of the March 27, 2006 assault on him, thereby violating his due process right under the Fourteenth Amendment to present evidence in his defense. This claim was required to have been brought by April 14, 2009. Therefore it is also barred by the applicable three-year statute of limitations and must be dismissed.

### F. Tenth Claim: Interference with Free Exercise Rights

Plaintiff alleges that on April 7, 2008, his First Amendment right to freely exercise his religion was violated by receipt of a meal containing one allegedly non-Kosher food item. Plaintiff, who asserts that he is registered as a practitioner of Judaism and is entitled to receive Kosher meals, names various individuals as liable for this constitutional violation, including Commissioner Fischer, "the Head Rabbi for the Department of Corrections", "D.O.C. Counsel", and an unidentified facility superintendent. Defendants argue that this claim is factually baseless because the allegedly offending food item does not violate any Kosher dictates. Defendants also argue that this

claim is legally baseless because Plaintiff has alleged only a de minimis, non-actionable constitutional infringement.

The First Amendment guarantees the right to the free exercise of one's religion. U.S. CONST., amend. I; Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003) (citation omitted). This protection extends into various aspects of prison life including, as pertinent to Plaintiff's Tenth Claim, that of an inmate's diet. The Second Circuit has held that it is clearly established that a prisoner has a right to a diet consistent with his religious beliefs. Therefore, courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith unconstitutionally burdens their free exercise rights.

A party asserting a free exercise claim bears the initial burden of establishing that the disputed conduct infringes on his or her sincerely held religious beliefs. E.g., Salahuddin v. Goord, 467 F.3d 263, 274-75 (2d Cir. 2006) (citations omitted). Once this showing is made, the burden then shifts to the defendant to identify a legitimate penological purpose justifying the decision, the reasonableness of which is judged against the test set out by the Supreme Court in Turner v. Safley, 482 U.S.

78 (1987). Id. It bears noting that "[t]here may be inconveniences [regarding denials of religiously required food] so trivial that they are most properly ignored." Tafari v. Annets, 06-CV-11360, 2008 WL 2413995, at *16 (S.D.N.Y. June 12, 2008) (quoting McEachin v. McGuinnis, 357 F.3d 197, 203 n. 6 (2d Cir. 2004)). "In this regard, the body of law regarding free exercise rights "is no different from many others in which the time-honored maxim de minimis non curat lex applies." McEachin, 357 F.3d at 203 n. 6.

Here, as an initial matter, Plaintiff has not alleged facts plausibly suggesting that the meal served in April 2008, infringed on his sincerely held religious beliefs. In particular, Plaintiff has not established how the meal that he received was actually improper. The basis for Plaintiff's belief that the meal in question violated Kosher guidelines was a notation on a package of salami included with the meal stating that the salami contained both beef and chicken. Plaintiff asserts that the salami was not Kosher because he is not permitted to "*mix meat and dairy.*" Complaint, Tenth Claim (emphasis in original). However, as Defendants argue, there is no indication that the salami contained both meat and dairy, and thus it did not require Plaintiff to "mix meat and dairy". Plaintiff's free exercise claim accordingly must be dismissed because he has not alleged or established that the meal was not in conformity with his Jewish

11

faith. See Benjamin v. Coughlin, 905 F.2d 571, 580 (2d Cir. 1990) (dismissing inmates' "dietary claim" asserting they had constitutional right to observe "Ital" under Rastafarianism, because plaintiffs "failed to clearly define the claim or to make the evidentiary showing required to establish any constitutional dietary claim"); Evans v. Albany Cty. Corr. Fac., No. 9:05-CV-1400 GTS/DEP, 2009 WL 1401645, at *8 (N.D.N.Y. May 14, 2009).

Moreover, even if Plaintiff had properly pled that the salami was not Kosher, he only would have alleged that on a single occasion, *one* portion of *one* meal was not Kosher. This deprivation clearly is no more than de minimis and cannot constitute the basis for an actionable First Amendment claim. See, e.g., Thaxton v. Simmons, Civ. No. 9:10-CV-1318 (MAD/RFT), 2012 WL 360104, at *6 (N.D.N.Y. Jan. 5, 2012) ("[T]he minor disruption of two kosher meals during a four-month period can hardly be called a substantial burden. At best, these incidents present a de minimis, or insubstantial, burden on Plaintiff's ability to freely exercise his religion.") (citations omitted), report and recommendation adopted, 2012 WL 360141 (N.D.N.Y. Feb. 2, 2012).

### F. Eleventh Claim: Interference with Mail and the Filing of Grievances

In support of his Eleventh Claim, Plaintiff asserts that on April 10, 2008, Correction Officer Chorney ripped up several of

12

Plaintiff's letters in front of him. Plaintiff also asserts that he submitted "at least one hundred grievances in 90 days while at Elmira" and "at least 75 were destroyed for sure." Complaint, Eleventh Claim. In addition, Plaintiff surmises that his correspondence to the Federal Bureau of Investigation ("FBI") must have been destroyed because he wrote to the FBI "over three hundred times and h[as] not heard from them only once." Id.

Interference with legal mail implicates a prisoner's right of access to the courts and right of free speech under the First and Fourteenth Amendments. Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003). To state a claim for denial of access to the courts by prison officials' interference with legal mail, the inmate must allege that the defendant "took or was responsible for actions that hindered" his efforts to pursue a legal claim. Id. (citing, inter alia, Lewis v. Casey, 518 U.S. 343, 351 (1996)). The inmate also must show that the interference with his mail resulted in actual injury. Id. (citation omitted). In order to state a claim for violation of a prisoner's First Amendment right to send and receive mail, "the inmate must show that prison officials 'regularly and unjustifiably interfered with . . . [his] mail.'" Id. (quotation and citation omitted).

Plaintiff's assertions concerning the "at least 75" allegedly destroyed grievances and the "over 300" intercepted letters are too vague and conclusory to state claims for relief.

13

See Gilliam v. Quinlan, 608 F. Supp. 823, 838 (S.D.N.Y. 1985) (dismissing as too vague and conclusory inmate's mail-tampering claim where neither in his complaint nor in his subsequent papers did inmate point to specific instances of such alleged tampering or identify who allegedly tampered with it). In addition, Plaintiff has failed to allege any personal involvement by any of the defendants in connection with the purported destruction of his grievances and letters. The allegation of a defendant's personal involvement in any alleged constitutional violation is a prerequisite to a damage award for personal injury under 42 U.S.C. 1983, Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994), and without such involvement, these claims must fail.

With regard to his allegation concerning Correction Officer Chorney's destruction of his letters on one occasion, the Court finds that this clearly fails to state a colorable claim. Courts in this Circuit have held that such isolated incidents are de minimis. See, e.g., Morgan v. Montanye, 516 F.2d 1367, 1371 (2d Cir. 1975) (in view of prisoner's showing of only a single instance where legal mail, clearly marked as being from an attorney, was opened out of his presence, and in absence of any indication that events complained of affected in any way the correspondence between prisoner and his attorney concerning prisoner's criminal appeal or any other matter, prisoner did not have a cause of action against prison authorities for injunctive

relief and damages based on officials' alleged unconstitutional inspection of prisoner's legal mail out of his presence); Battice v. Phillip, No. CV-04-669 (FB)(LB), 2006 WL 2190565, at *5 (E.D.N.Y. Aug. 2, 2006) ("Battice also fails to state a claim . . . that defendants violated his rights to send and receive legal mail, because he cites to only one instance of mail tampering, which did not result in any actual harm. . . .").

Moreover, Plaintiff has failed to adequately allege actual injury. Although he states that he was "greatly harmed" by Correction Officer Chorney's destruction of his mail on one occasion, such an allegation is too conclusory for purposes of surviving a Rule 12(b)(6) motion to dismiss. See generally Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir. 1977) (per curiam) ("This court has repeatedly held that complaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed. Diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.") (internal quotations omitted).

**G. Fourteenth Claim: Conspiracy to Commit Criminal Acts**

As his Fourteenth Claim, Plaintiff asserts that "on 2/6/2008, the Department of Corrections has been and is deliberate [sic] indifference [sic] to my health and safety by allowing staff in every prison I have been inside to violate all

15

my constitutional rights." Complaint, Fourteenth Claim. He also asserts that he has "been infected in every prison by staff and inmate agents . . . with blood, feces, urine and sperm and chemicals" and has "had infections in [his] throat, chest, stomach and [his] head from these many criminal acts." Id. Plaintiff claims that he has "been robbed in every prison and some twice [sic]" leading to "emotional and psychological pain with the physical pain. . . ." Id. He alleges that "the Commissioners and his deputies have known from the start exactly what has been going on here" and that "all" DOCCS staff have been "directly responsible" because they have "done nothing" to stop these criminal acts and have conspired to cover up the alleged criminality and constitutional violations. Id. Apart from "the Commissioner", Plaintiff does not identify any of the individuals allegedly involved in the events giving rise to the Fourteenth Claim. As noted above, failure to allege personal involvement by the defendants is fatal to a Section 1983 claim. See Wright v. Smith, 21 F.3d at 501.

A conspiracy claim under Section 1983 must allege that (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on the plaintiff and (2) an overt act was committed in furtherance of that goal. Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002). Vague and conclusory allegations that the defendants have

16

engaged in a conspiracy are insufficient to withstand a motion to dismiss. Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983); see also Brown v. City of Oneonta, 106 F.3d 1125, 1133 (2d Cir. 1997) (complaints containing only conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief). A Section 1983 conspiracy claim must not only allege the existence of an agreement among the state actors, but also the "actual deprivation of constitutional rights." Romer v. Morgenthau, 119 F.Supp.2d 346, 363-64 (S.D.N.Y. 2000) (citing Malsh v. Austin, 901 F. Supp. 757, 765 (S.D.N.Y. 1995)). "Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights." Id. (citing Malsh, 901 F. Supp. at 765).

Plaintiff alleges in conclusory fashion that practically all of DOCCS has been involved in a conspiracy to harm him and violate his constitutional rights. Instead of asserting any specific facts giving rise to the plausible existence of a conspiracy, Plaintiff makes vague, shocking statements that on unspecified dates, unidentified individuals infected him with various diseases, poisoned him with unspecified chemicals, and routinely beat and robbed him. These allegations are plainly insufficient to suggest a plausible constitutional claim. See, e.g., Dorsey v. Fisher, No. 9:09-CV-1011GLSDEP, 2010 WL 2008966,

17

at *7 (N.D.N.Y. May 19, 2010) (finding "wholly unbelievable" inmate's claim that prison officials and other inmates conspired against him where plaintiff alleged that inmate porters laced his food with infected DNA or infected bodily fluids at the direction of DOCCS officials and that DOCCS supervisors rewarded them for doing so and his entire prison block was full of stolen property that was taken from inmates by inmate porters at the behest of DOCCS officials); Walsh v. Goord, No. 07-CV-0246Sr, 2007 WL 1572146, at *7 (W.D.N.Y. May 23, 2007) ("The allegations of this far-ranging and far-fetched conspiracy among the very upper echelon of DOCS' officials are supported by no specific facts. Complaints containing only conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief.") (citing, inter alia, Brown v. City of Oneonta, 106 F.3d 1125, 1133 (2d Cir. 1997), overruled on other grounds, Gonzaga Univ. v. Doe, 536 U.S. 273 (2002)). Accordingly, the Fourteenth Claim is dismissed for failure to state a claim.

**IV.  Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss is granted, and Plaintiff's Complaint is dismissed in its entirety. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore leave to proceed in forma pauperis on appeal is denied.

Coppedge v. United States, 369 U.S. 438, 444-45 (1962). Any future request to proceed on appeal in forma pauperis should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED**

                                      **S/Michael A. Telesca**

                                      _____
                                      HONORABLE MICHAEL A. TELESCA
                                      United States District Judge

Dated:   Rochester, New York
           October 8, 2013